WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Clayton H Cluff, | No. CV-21-00789-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Clayton H. Cluff challenges the denial of his application for disability insurance benefits ("DIB") under the Social Security Act ("the Act") by Defendant the Commissioner of the Social Security Administration ("Commissioner"). Plaintiff filed a complaint with this Court seeking judicial review of that denial. (Doc. 1.) After considering Plaintiff's opening brief (Doc. 20), the Commissioner's response brief (Doc. 25), and the Administrative Record (Doc. 17, hereinafter "A.R."), the Court finds no reversible error and affirms the denial of DIB.

**I.    Procedural History**

Plaintiff applied for DIB on March 31, 2019, alleging disability beginning August 6, 2017. (A.R. at 60.) State agency reviewers denied the application initially on June 19, 2019 (A.R. at 75) and again upon reconsideration on September 6, 2019 (A.R. at 96). Plaintiff timely requested an administrative hearing (A.R. at 116), which was held September 9, 2020 (A.R. 139). Plaintiff testified at the hearing (A.R. at 38) along with

Vocational Expert Alicia Hiles (A.R. 55). Administrative Law Judge ("ALJ") Michael Cominsky denied Plaintiff's application in a written decision dated September 30, 2020. (A.R. at 10.) The Social Security Appeals Council denied Plaintiff's request for review March 16, 2021. (A.R. at 1.) Plaintiff then requested judicial review. (Doc. 1.)

**II.   Evaluation Process**

To determine whether a claimant is disabled, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tacket v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step one the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaging in substantial activity, the claimant is not disabled. *Id.* If the claimant is not engaging in such activity, the ALJ moves to step two. *Id.* At step two, the ALJ considers whether the claimant has a severe medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairment or combination of impairments is not severe, the claimant is not disabled. *Id.* If the impairment or combination of impairments is severe, the ALJ moves to step three. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment or combination of impairments meets or medically equals a listed impairment, the claimant is disabled; if not, the ALJ moves to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). The RFC determination is based on all relevant evidence in the case record including statements from medical and non-medical sources. C.F.R. § 404.1545(a). If the claimant can perform his past work, he is not disabled; if he cannot perform his past work, the ALJ moves to step five. 20 C.F.R. § 404.1520(a)(4)(iv). At step five the ALJ determines whether the claimant can perform any other work in the national economy based on his

RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can perform other work in the national economy, he is not disabled; if he cannot then he is disabled. *Id.*

### III. The ALJ's Decision

In his unfavorable decision, the ALJ found Plaintiff met the insured status requirements of the Act through September 30, 2022, had not engaged in substantial gainful activity since August 6, 2017, and had two severe impairments—a seizure disorder and headaches—that did not did not meet or medical equal a Listing (A.R. at 15-19.) At step four, the ALJ found Plaintiff had the RFC to perform work at all exertional levels with the following non-exertional limitations: he should not climb ladders, ropes, or scaffolds; he can work at moderate noise levels; he should not work in direct sunlight; he should not work around hazards such as dangerous machinery or work at unprotected heights; he should not operate motorized vehicle or drive as job duty; and he should avoid concentrated exposure to high heat work environments. (A.R. at 19.) Finally, the ALJ determined Plaintiff was unable to perform past relevant work, but that Plaintiff could perform other work in the national economy. (A.R. at 24-25.)

### IV. Discussion

This Court defers to the Commissioner's disability determination if it is supported by substantial evidence and free of legal error. 42 U.S.C. § 405; *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than . . . a scintilla but less than a preponderance." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). It is relevant evidence that a reasonable person "might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (internal quotations omitted). When determining whether substantial evidence exists, the Court considers the record as a whole and may not isolate a "specific quantum of supporting evidence." *Orn*, 495 F.3d at 630 (internal quotations omitted). Where evidence reasonably can be interpreted in more than one way, the Court must uphold the ALJ's decision and not substitute the ALJ's judgment with its own. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred by failing to (1) support the assigned RFC with substantial evidence and (2) provide clear and convincing reasons for discrediting the Plaintiff's testimony. The Court addresses each in turn.

### A.   Substantial Evidence Supports the ALJ's RFC Determination

When formulating Plaintiff's RFC, the ALJ was persuaded by the prior administrative findings of medical consultants Drs. Zuess and Dr. Reddy. (A.R. at 23.) Plaintiff argues the RFC assessment was not supported by substantial evidence because Drs. Zuess and Reddy failed to consider limitations related to Plaintiff's conversion disorder. Plaintiff is mistaken.

Dr. Zuess' assessment reads:

> [a]t the EMU, one EEG event was consistent with an epileptic EEG event, but there were no clinical manifestations of a seizure. Therefore, the evidence does not substantiate that any of the behaviors [Plaintiff] has shown that resemble seizures are genuine epileptic events. They [diagnosed] him with epilepsy based on that one EEG change without clinical manifestations, but it appears they are doing that as a precaution.

(A.R. at 72.) Based on his review of the medical evidence, Dr. Zuess concluded Plaintiff suffered from headaches and dizziness, but not epileptic seizures. (A.R. at 72.) Dr. Zuess considered the headaches and dizziness when determining Plaintiff's functional limitations, resulting in a postural and environmental limitations, but no exertional limitations. (A.R. at 70-72.) Although Dr. Zuess was not persuaded by a single test suggesting conversion-like episodes, his report clearly shows he considered the test in his analysis.

As for Dr. Reddy, Plaintiff argues her opinion is unreliable because it substantially copied Dr. Zuess' notes while endorsing his conclusions. But Plaintiff cites no authority for the proposition that Dr. Reddy had to do more, especially if she agreed with Dr. Zuess' assessment. The Court rejects Plaintiff's argument that these opinions are unreliable.

### B.   The ALJ Adequately Rejected Plaintiff's Symptom Testimony

When evaluating a claimant's testimony regarding pain and symptoms, an ALJ

performs a two-step analysis to determine whether the testimony is credible. *Garrison v. Colson*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant presented objective medical evidence of an underlying impairment that could reasonably produce the pain and symptoms alleged. *Id.* If so, and if there is no evidence of malingering, then the ALJ can only reject the testimony by offering clear and convincing reasons for doing so. *Id.* at 1014-15. General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (internal quotations and citation omitted).

At step one, the ALJ found Plaintiff had medically determinable impairments that could cause his alleged symptoms. (A.R. at 20.) But at step two, the ALJ found Plaintiff's symptom testimony was not consistent with the overall record. (A.R. at 20, 23.) The ALJ gave three clear and convincing reasons for rejecting Plaintiff's symptom testimony.

First, the ALJ found Plaintiff's testimony was inconsistent with the objective medical evidence. (A.R. at 20.) Although testimony regarding symptom severity need not be substantiated by medical evidence, the testimony should be consistent with the medical evidence. SSR 16-3p. The ALJ noted several instances where Plaintiff's complaints were inconsistent with diagnostic tests. (*See e.g.*, A.R. at 20-21 (normal CT scan, negative MRI, normal EEG, normal three-day video EEG, no features of tonic-clonic seizures or partial seizures).) The ALJ also described how Plaintiff's complaints were inconsistent with the conclusion of his treating physicians. (*See e.g.*, A.R. at 20 ("[Dr. Hameed] advised the claimant to return to work."), 21 ("[F]rom a neurological standpoint, [the claimant] can return to work.").)

Second, the ALJ found Plaintiff's symptom reporting inconsistent. For example, although Plaintiff complained of seizure-like episodes and headaches following an at-work injury, his reports detailing the incident changed over time. (A.R. at 20.) The ALJ also described Plaintiff's pattern of reporting worsened symptoms after being told he could return to work. (*See e.g.*, A.R. at 20 (began complaining of seizure-like episodes after post-

injury MRI was negative), 20-21 (reported worsened headaches and had two episodes during appointment after being told he could return to work at the last appointment).) Consistent with this pattern, Plaintiff's also sought new physicians when prior physicians recommended the same treatment or recommended Plaintiff return to work. (*See e.g.*, A.R. at 21 (established care with different neurologist after Dr. Hameed twice recommended Plaintiff return to work; evaluated at Barrow after Phoenix Neurology prescribed Keppra and Topiramate; saw primary care physician after Barrow recommended continuing Topamax and declined to say the work injury caused the seizures).)

Finally, the ALJ found that treatment ameliorated Plaintiff's symptoms. Though one EEG showed some seizure-type epileptic activity, leading one treating doctor to diagnose Plaintiff with right temporal epilepsy, that same doctor also concluded the EEG indicated seizures were well controlled with Topamax. (A.R. at 21.) Although Plaintiff argues his inability to tolerate Topamax undermines this conclusion, his argument is based on a misunderstanding of the law. Plaintiff argues SSR 18-3p, outlining denial of benefits for failure to follow prescribed treatment, allows claimants to discontinue treatment for good cause, but SSR 18-3p only applies to individuals that have already been deemed disabled. ("We will not determine whether an individual failed to follow prescribed treatment if we find the individual is not disabled. . .") Because Plaintiff was never found to be disabled, SSR 18-3p is inapplicable.

The Court finds the ALJ provided clear and convincing reasons for rejecting the Plaintiff's symptom testimony.

**IT IS ORDERED** affirming the Commissioner's decision to deny Plaintiff DIB. The Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 26th day of July, 2022.

Douglas L. Rayes
United States District Judge